UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARRELL GRAHAM,                                          **DECISION AND ORDER**

               Petitioner,                   1:20-CV-01684 EAW

   v.

PAUL PICCOLO,

            Respondent.

---

## I.     <u>INTRODUCTION</u>

Represented by retained counsel, Darrell Graham ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Dkt. 1).[1]  Petitioner challenges the constitutionality of the judgment entered against him on January 6, 2009, in New York State Supreme Court, Erie County (Burns, J.), following his guilty plea to second-degree attempted murder (Penal Law ("P.L.") §§ 110.00, 125.25(1), 20.00), a class B violent felony; and second-degree criminal possession of a weapon (P.L. § 265.03(3)), a class C violent felony.[2]  For the reasons below, the petition is dismissed as untimely.

---

[1]      Page citations to Petitioner's and Respondent's pleadings are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page.

[2]      Petitioner is serving his sentence on this conviction.  *See* https://nysdoccslookup.doccs.ny.gov/ (results for DIN 09B0075 (last accessed July 2, 2024)).

## II.   BACKGROUND

### A.   Indictments and Guilty Pleas

By Erie County Indictment No. 02735-2007, Petitioner was charged with second-degree criminal possession of a weapon (P.L. § 265.03(3)), fourth-degree criminal possession of a controlled substance (P.L. § 220.09(1)), and failure to obey a red light (New York Vehicle and Traffic Law § 1111(d)(1)).  By Erie County Indictment No. 01641-2007, Petitioner was charged with attempted second-degree murder (P.L. §§ 110.00, 125.25(1), 20.00), second-degree conspiracy (P.L. § 105.15), and first-degree assault (P.L. §§ 120.10(1), 20.00).

On December 1, 2008, Petitioner appeared with his attorney, Carl Dobozin, Esq. ("Mr. Dobozin"), in New York State Supreme Court, Erie County, before Justice Christopher J. Burns ("Justice Burns").  (Transcript of December 1, 2008 Hearing ("Plea Tr.") at 2).[3]  Petitioner agreed to plead guilty to second-degree attempted murder (P.L. §§ 110.00, 125.25(1), 20.00), a class B violent felony; and second-degree criminal possession of a weapon (P.L. § 265.03(3)), a class C violent felony.  (*Id.* at 3-4).  Petitioner also agreed to waive his right to appeal.  (*Id.* at 4).  The prosecutor stated that "the only consideration" given to Petitioner in exchange for the guilty plea was that the prosecutor "agreed to recommend that [Petitioner] be sentenced concurrently."  (*Id.*).

---

[3]     Respondent manually filed the state court transcripts and the Erie County District Attorney's Office's original case file as Respondent's Exhibit A.  Pursuant to the Court's text order (Dkt. 9), Respondent electronically filed Respondent's Exhibits B through G (the state court records, including the briefs and orders in connection with Petitioner's direct appeal and post-conviction motions).  (Dkt. 10).

After ensuring Petitioner understood the rights he was waiving by pleading guilty and the possible sentences he could receive on each count (*id.* at 5-8), Justice Burns had the following colloquy with Petitioner:

> THE COURT: That's -- with regard to sentence, have any promises been made to you by anyone in connection with your plea other than what I am about to say. I have had a conversation with your attorney and the assistant district attorney and although I am not inclined to give a sentence commitment with regard to the amount of jail time, the District Attorney's office has indicated that they have no objection to these sentences running concurrently, which means at the same time, so you wouldn't finish one sentence and start another, they would run at the same time, have you had a conversation with Mr. Dobozin about that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. And do you understand that?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: All right. I will commit to concurrent time and I will listen to whatever information you and your attorney put forth as well as the District Attorney's office and I'll listen and I'll come up with a sentence that I feel is just, *but that's as far as I'll go today, to say I would run any sentence concurrent with each other, do you understand that*?
>
> THE DEFENDANT: Yes.

(*Id.* at 8-9 (emphasis supplied)). Justice Burns then asked Mr. Dobozin and the prosecutor if he had just "accurately reflected [their] conversation," and both attorneys replied affirmatively. (*Id.* at 9). Justice Burns proceeded to accept Petitioner's guilty plea. (*Id.* at 9-15). Sentencing was scheduled for January 6, 2009. (*Id.* at 15).

## B.    Sentencing

On January 6, 2009, Justice Burns imposed concurrent, determinate sentences of 20 years' imprisonment plus five years' post-release supervision on the attempted second-

degree murder charge; and ten years' imprisonment plus five-years' post-release supervision on the second-degree criminal possession of a weapon conviction. (Transcript of January 6, 2009 Hearing at 11).

Immediately after Judge Burns announced the sentence, Mr. Dobozin asserted that it was his "understanding that there was a [sentencing] commitment on this case," and that Justice Burns "was thinking of a sentence of seven to ten years cap." (*Id.* at 11-12). Justice Burns responded that he had "committed to concurrent if there -- if the testimony, et cetera, worked out" but that he had "no notes and . . . no recollection of any number." (*Id.* at 12). Justice Burns commented that "it would be unlike [him] to do that." (*Id.*). Justice Burns asked the prosecutor if she had any recollection of a sentence promise; the prosecutor replied, "No, Your Honor, I don't have a recollection of that." (*Id.*). Mr. Dobozin insisted that "[he] had a cap in [his] notes, Your Honor." (*Id.*). Justice Burns replied, "I did not cap it," and ended the hearing. (*Id.* at 13).

## C.    Direct Appeal

Represented by new counsel, Petitioner appealed to the Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division"). (Dkt. 10 at 7-28). The Appellate Division unanimously affirmed the conviction on October 1, 2010. *People v. Graham*, 77 A.D.3d 1439 (4th Dep't 2010). The Appellate Division held that Petitioner validly waived his right to appeal in both guilty pleas, *id.* at 1439-40; failed to preserve his claim that the guilty pleas were not knowing and voluntary, *id.* at 1440; and failed to show that the sentences were unduly harsh or severe, *id.* Appellate counsel sought leave to

appeal, which was denied by the New York Court of Appeals on November 22, 2010. *People v. Graham*, 95 N.Y.3d 920 (2010).

### D.    First Motion to Vacate the Judgment

Petitioner retained new counsel, Philip Dabney, Esq. ("Mr. Dabney"), who filed a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 ("first 440 motion") on October 13, 2011.  (Dkt. 10 at 60-67).  Petitioner challenged the voluntariness of his guilty plea and Mr. Dobozin's performance, claiming Mr. Dobozin's misrepresentations about the trial court's purported sentencing commitment effectively coerced him into pleading guilty.

In his affidavit in opposition (Dkt. 68-72), the prosecutor noted that Petitioner did not provide an affidavit from Mr. Dobozin, did not articulate what Mr. Dobozin actually said to him, and did not supply affidavits from himself or the unnamed family members who supposedly were present for Mr. Dobozin's misrepresentations.

Justice Burns denied the first 440 motion in a decision and order (Dkt. 10 at 73-75) signed on February 1, 2012.  (*Id.* at 75).  Justice Burns rejected, as unsupported, Petitioner's claim that Mr. Dobozin affirmatively misrepresented that Justice Burns had agreed to cap any sentence at ten years' imprisonment.  (*Id.* at 74-75).  Justice Burns found that because Petitioner "failed to offer sworn, detailed, factual affidavits from any individual with personal knowledge of the alleged misrepresentations," he had "failed to substantiate the need for a hearing."  (*Id.* at 75).  Further, Justice Burns found that a hearing was not required where, as here, "the assertions raised by the defendant are directly contradicted by the plea colloquy entered into in this case."  (*Id.* at 75).

On December 15, 2012, Petitioner filed a *pro se* application for leave to appeal. (*Id.* at 77-104). In that application, he noted that he had filed a *pro se* motion for reargument, which he said had been denied by Justice Burns on November 14, 2012 (*id.* at 100; *see also id.* at 127).[4] The prosecutor opposed the granting of leave by letter dated January 16, 2013. (*Id.* at 105-06). The Appellate Division denied leave to appeal on February 19, 2013. (*Id.* at 107-08).

### E.   Second Motion to Vacate the Judgment

Petitioner subsequently retained a new attorney, Emily Trott, Esq. ("Ms. Trott"). On May 17, 2018, Ms. Trott filed a C.P.L. § 440.10 motion ("second 440 motion"), reasserting the same claims raised in the first 440 motion. (Dkt. 10 at 110-21). Ms. Trott included an affidavit from Petitioner dated May 17, 2018 (*id.* at 111-13); and an affidavit from Mr. Dobozin dated December 6, 2017. (*id.* at 114). In his affidavit, Mr. Dobozin stated:

> [After the sentencing,] I determined that I had confused Darrell Graham's case with another similar case whether there had been a seven to ten year cap. I had, inadvertently, misled Darrell Graham as to a sentencing cap of seven to ten years, and, based on my misleading assurance to Darrell Graham concerning a cap of seven to ten years, he did enter plea of guilty on both Indictments.

(*Id.*). The prosecutor filed an opposing affidavit, asserting that Petitioner's and Mr. Dobozin's current allegations were refuted by the record. (*Id.* at 122-26). In particular,

---

[4] The motion for argument of the first 440 motion and Justice Burns's November 14, 2012 order are not among the state court records filed by Respondent at Docket 10. Because it makes no difference to the ultimate conclusion that the petition is untimely, the Court assumes that the motion to reargue the denial of the first 440 motion was a "properly filed application" within the meaning of 28 U.S.C. § 2244(d)(2) and provides tolling.

- 6 -

the prosecutor noted that at the plea hearing, Justice Burns asked both attorneys "if the limited commitment [i.e., running the sentences concurrently] had been stated accurately," and "[c]ontrary to his sworn allegation," Mr. Dobozin "acknowledged that it had been." (*Id.* at 125).

After holding a hearing on September 13, 2018, and September 15, 2018,[5] Justice Burns issued a decision and order dated November 13, 2018.  (*Id.* at 127-32).  Petitioner and his mother, Roszella Baldon ("Ms. Baldon"), both testified, as did Mr. Dobozin.  (*Id.* at 127).  As summarized by Justice Burns, Petitioner testified that "Mr. Dobozin told him that the [c]ourt would cap the sentence at 10 years," but "he originally rejected that plea." (*Id.* at 129).  Petitioner "then testified that on a later occasion, Mr. Dobozin told him the sentence would be between seven and ten years and he agreed."  (*Id.*).

Ms. Baldon testified that, during multiple conversations, Mr. Dobozin said "he was trying to work out a disposition that would include or a five or seven[-]year prison sentence."  (*Id.*).  Ms. Baldon conceded that "none of those conversations included" Petitioner.  (*Id.*).  Ms. Baldon also testified that she was not present for any conversations between Mr. Dobozin and Petitioner.  (*Id.*).

For his part, Mr. Dobozin testified that "there was a commitment by the [c]ourt to sentence the defendant to between seven and ten years['] incarceration." (*Id.*).  As Justice Burns observed, there was a discrepancy between Mr. Dobozin's testimony and his

---

[5]     In his response supplementing the state court records (Dkt. 10), Respondent failed to include the transcripts of the hearing from the second 440 motion.  Because the Court is denying the petition on procedural grounds, the transcripts are unnecessary to its disposition of the case.

December 6, 2017 affidavit concerning the basis for Mr. Dobozin's belief there was a sentencing commitment. (*Id.* at 129-30). Justice Burns also noted that apart from the purported sentence promise, Mr. Dobozin "had very little independent recollection of the case." (*Id.* at 130). Ultimately, Justice Burns rejected the involuntariness and ineffectiveness claims as factually unsupported and contradicted by the plea transcript. (*Id.* at 130-32). The Appellate Division denied leave to appeal on April 21, 2019. (*Id.* at 146).

### F.      Federal Habeas Petition

Ms. Trott filed a habeas petition on Petitioner's behalf asserting the following grounds for relief: (1) Petitioner's guilty plea was involuntary and unknowing because it was based on Mr. Dobozin's misrepresentation that the trial court had promised to cap the sentence at no less than seven, and no more than ten, years in prison; (2) Mr. Dobozin provided ineffective assistance during the plea proceeding by falsely telling Petitioner there was a sentence promise of between seven and ten years in prison; and (3) Justice Burns's denial of the second 440 motion, and the Appellate Division's denial of leave to appeal, were arbitrary and capricious, an abuse of discretion, and violative of due process. (Dkt. 1 at 6).

Respondent filed an answer (Dkt. 4) and memorandum of law (Dkt. 5) in opposition to the petition. Respondent argues that the petition is untimely and that Petitioner's claims, in any event, lack merit. Ms. Trott filed a reply. (Dkt. 7).

III.   **TIMELINESS**

    A.    **Statute of Limitations**

Petitions brought under the authority of 28 U.S.C. § 2254 are subject to a one-year

statute of limitations that begins to run upon the latest of four events:

> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such
> review;
>
> (B) the date on which the impediment to filing an application
> created by State action in violation of the Constitution or laws
> of the United States is removed, if the applicant was prevented
> from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly
> recognized by the Supreme Court and made retroactively
> applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of
> due diligence.

28 U.S.C. § 2244(d)(1).

Because there will be a "judgment of conviction" in all criminal cases, subsection

(A) of § 2244(d)(1) usually governs the commencement of the limitations period for § 2254

petitions.  *See Simmons v. United States*, 974 F.3d 791, 798 (6th Cir. 2020) (stating, in the

context of habeas petition filed under 28 U.S.C. § 2255, that "the one-year period will, as

a default, be triggered by Section 2255(f)(1)" since "[t]he 'judgment of conviction'

referenced in Section 2255(f)(1) is the only event mentioned in Section 2255(f) that will

necessarily occur in every case"); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815-16

(2d Cir. 2000) (stating that 28 U.S.C. §§ 2254 and 2255 are generally seen as in *pari*

*materia*" and therefore "the reasoning of [cases] in the context of § 2255 petitions applies equally to § 2254 petitions").

"Habeas corpus relief may be sought in excess of one year of a conviction becoming final if the circumstances set forth in 28 U.S.C. § 2244(d)(1)(B)[, ](C)[,] or (D) are present." *Sorce v. Artuz*, 73 F. Supp. 2d 292, 294 (E.D.N.Y. 1999). In addition, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2).

The Second Circuit applies the prison mailbox rule, rather than the state's filing rules, to determine the date on which a *pro se* application for post-conviction or other collateral review in state court is "properly filed" for purposes of § 2244(d)(2). *See Fernandez v. Artuz*, 402 F.3d 111, 114, 116 (2d Cir. 2005) (finding that the petitioner's state *coram nobis* motion was "properly filed" on the date he delivered it to prison authorities for mailing). A state court application or motion for collateral relief is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000); *see also Carey v. Saffold*, 536 U.S. 214, 217, 221 (2002) (approving Second Circuit's definition of "pending").

### B.    Filing Date of the Petition

To analyze whether the petition was filed in compliance with the one-year statute of limitations, the Court first must determine the date on which the petition was filed. Respondent appears to have applied the prison mailbox rule, which provides that "a *pro se* prisoner's habeas petition is deemed filed at the moment he gives it to prison officials." *Hardy v. Conway*, 162 F. App'x 61, 62 (2d Cir. 2006).  When there is no indication when a *pro se* petitioner handed his petition over to prison officials for mailing, courts in this Circuit have assumed that it was filed on the date it was signed.  *Id.* (collecting cases). Respondent asserts that the petition was filed on October 2, 2020 (Dkt. 5 at 7), the date on which Ms. Trott signed the verification (Dkt. 1 at 11).[6]

According to the prison mailbox rule, pleadings by a *pro se* inmate are considered filed with the Court at the moment the inmate hands those pleadings to prison authorities for posting to the Court through the prison mail system.  *Houston v. Lack*, 487 U.S. 266, 271-72, 276 (1988).  But the district courts in this Circuit have declined to extend the prison mailbox rule to habeas petitioners proceeding with counsel.  *See Brockway v. Burge*, 710 F. Supp. 2d 314, 322 (W.D.N.Y. 2010) (declining to apply prison mailbox rule to a habeas petition when a prisoner was represented by counsel; deeming the petition's date of filing to be the date the pleading was received by the district court clerk's office (citing *United States v. Hurst*, 322 F.3d 1256, 1261 (10th Cir. 2003) ("[T]he submission of a counseled § 2255 motion to the custody of the clerk commences the action, regardless of the date the

---

[6]    The docket reflects that the petition was not filed with the Court until November 17, 2020.  (*See* Dkt. 1-6 (certificate of service)).

motion is formally filed.")); *United States v. Terry*, No. 18-CR-560 (GRB), 2022 WL 2954085, at *3 (E.D.N.Y. July 26, 2022) (rejecting counseled defendant's argument that "under the 'prison mailbox rule,' his deposit of the letter onto the door of his cell constitutes the filing of a request to withdraw before the acceptance of the plea by the district court"); *White v. Conway*, No. 9:07-CV-1175, 2011 WL 1315592, at *3 (N.D.N.Y. Mar. 31, 2011) (holding that "the prison mailbox rule is inapplicable to the present [§ 2254] matter because [the] [p]etitioner was represented by counsel" (citing *Brockway*, 710 F. Supp. 2d at 322)).

Although the Supreme Court and the Second Circuit have not addressed the question, most circuit courts have declined to apply the prison mailbox rule when petitioners are represented, reasoning that counseled litigants do not face the same procedural hurdles as their unrepresented and incarcerated counterparts. *Terry*, 2022 WL 2954085, at *3 (collecting circuit authority).  This Court need not decide this question because even using the prison mailbox rule to calculate the filing date of all Petitioner's pleadings—both in state and federal courts—the instant petition was filed well outside the one-year limitations period, and it is not saved by statutory tolling under 28 U.S.C. § 2244(d)(2).

### C.   The Petition Is Untimely Under Section 2244(d)(1)(A), and Section 2244(d)(2) Does Not Provide Sufficient Statutory Tolling

Petitioner has not challenged Respondent's choice of subsection (A) of § 2244(d)(1) as supplying the relevant start-date.  Under subsection (A), a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is 90 days following the date on

which direct review by the state's highest court is complete. *See Gonzalez v. Thaler*, 565 U.S. 134, 140 (2012) ("For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the 'conclusion of direct review'—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the 'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires."); U.S. Sup. Ct. R. 13(1).

The New York Court of Appeals denied Petitioner's application for leave to appeal on November 22, 2010, *People v. Graham*, 15 N.Y.3d 920 (2010), and Petitioner did not seek a writ of certiorari from the Supreme Court. Ninety days after November 22, 2010, fell on February 20, 2011, a Sunday. Where, as here, a period is measured in days or longer units, the Court must "count every day, including intermediate Saturdays, Sundays, and legal holidays," Fed. R. Civ. P. 6(a)(1)(B), and must "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C); *see also Mickens v. United States*, 148 F.3d 145, 148 (2d Cir. 1998) (applying Federal Rule of Civil Procedure 6 ("Rule 6") to calculations involving AEDPA's analogous one-year limitations period for habeas petitions filed by federal prisoners under 28 U.S.C. § 2255). Accordingly, the conviction became final on Tuesday, February 22, 2011.

Petitioner thus had one year from February 22, 2011, or until February 22, 2012, in which to file the instant § 2254 petition. *See*, *e.g.*, *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998) (stating that since statute of limitations applicable to § 2254 and § 2255 petitions is

measured in years, "the last day for instituting the [petition] is the anniversary date of the start of the limitations period" (citing Fed. R. Civ. P. 6(a); *Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir. 1990)).  Giving Petitioner the benefit of the prison mailbox rule, the petition was filed on October 2, 2020, more than eight years after the date the judgment became final on direct review.  Because Petitioner filed two 440 motions after the limitations period began running on February 22, 2011, the Court next considers whether they provide statutory tolling under 28 U.S.C. § 2244(d)(2).

The limitations period ran from February 22, 2011, until October 13, 2011,[7] when the first 440 motion was filed.  *See*, *e.g.*, *Wilkins v. Kirkpatrick*, No. 06 CIV. 2151 SCRLMS, 2009 WL 3644082, at *9 (S.D.N.Y. Nov. 4, 2009) ("[T]he date the [p]etitioner dated and signed his [C.P.L. § ]440.10 motion and has sworn that he mailed that motion . . . initiates the tolling of the statute of limitations under 28 U.S.C. § 2244(d)(2).").  By that point, 233 days had elapsed on the limitations period.

The period was tolled until the Appellate Division denied leave to appeal Justice Burns's denial of the motion.  *See Collins v. Artus*, 496 F. Supp. 2d 305, 312 (S.D.N.Y. 2007) ("In the case of a motion to vacate a conviction under C.P.L. § 440.10, the statute of limitations is tolled from the date the motion is filed to the date it is decided by the trial court, as well as during the pendency of an application for leave to appeal from the trial

---

[7]   As noted above, without resolving the issue, the Court has used the prison mailbox rule for determining the filing of all Petitioner's pleadings, regardless of whether they were counseled or *pro se*.  In support of the first 440 motion, Mr. Dabney only submitted his own affidavit dated October 13, 2011.  (Dkt. 10 at 67).  The Court therefore has used October 13, 2011, as the first 440 motion's date of filing.

court's denial of that motion."); *Evans v. Senkowski*, 228 F. Supp. 2d 254, 262 (E.D.N.Y. 2002) (holding that the statute of limitations was tolled "from the filing of the First Section 440 Motion until the denial of appeal by the Appellate Division" (citing *Gomez v. Duncan*, No. 02CIV0846LAPAJP, 2002 WL 1424584, at *3 (S.D.N.Y. July 1, 2002); *Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000), *superseded by statute on other grounds as stated in Saunders v. Senkowski*, 587 F.3d 543, 549 (2d Cir. 2009)).  The Appellate Division issued its order denying leave on Tuesday, February 19, 2013.  (Dkt. 10 at 107-08).

In his reply, Petitioner argues that he is entitled to additional equitable tolling because he "not only filed for leave to appeal pursuant to C.P.L. [§ ]460.15, to the Appellate Division, but also filed for leave to appeal pursuant to C.P.L. [§ ]460.20, to the Court of Appeals."  (Dkt. 7 at 1).  As Petitioner observes, Respondent did not include the leave application to the Court of Appeals among the state court records.  (*Id.* at 1 (referring to Dkt. 10)).  However, "New York State law does not allow a further discretionary appeal of the denial of relief under C.P.L. § 440.10."  *MacLeod v. McCarthy*, No. 1:20-CV-01680 EAW, 2024 WL 3022587, at *4 (W.D.N.Y. June 17, 2024) (citing *Ramos v. Walker*, 88 F. Supp. 2d 233, 234, 235 & nn.3, 9 (S.D.N.Y. 2000)); *see also see Cosey v. Lilley*, 460 F. Supp. 3d 346, 370 (S.D.N.Y. 2020) ("[I]f a justice of the Appellate Division denies a certificate for leave to appeal [the denial of a C.P.L. § 440.10 motion] pursuant to [C.P.L. § ]460.15, a petitioner may not appeal to the Court of Appeals.").  Indeed, Petitioner concedes that a leave application to the Court of Appeals as to a C.P.L. § 440.10 motion "ordinarily does not lie."  (Dkt. 7 at 1).

Because Petitioner's purported leave application to the Court of Appeals was not a "properly filed application" within 28 U.S.C. § 2244(d)(2), it did not provide tolling. *See*, *e.g.*, *Najera v. Lilley*, No. 21CV7190CSAEK, 2022 WL 3566969, at *3 (S.D.N.Y. May 3, 2022) (petitioner's application for leave to appeal the Appellate Division's denial of leave to appeal the denial of his C.P.L. § 440.10 motion was "of no moment" "because no such further review by the New York Court of Appeals was available"), *adopted*, No. 21CV7190CSAEK, 2022 WL 2437906 (S.D.N.Y. July 5, 2022), *appeal dismissed*, No. 22-1618, 2022 WL 18460579 (2d Cir. Dec. 9, 2022); *Smalls v. Smith*, No. 05-CV-5182 (CS), 2009 WL 2902516, at *7 (S.D.N.Y. Sept. 10, 2009) ("Petitioner's purported motion to appeal the Appellate Division's [C.P.L. § ]440.10 ruling to the Court of Appeals . . .did not further toll the . . . [l]imitation period because further review by the Court of Appeals was unavailable under New York law.").

Thus, contrary to Petitioner's contention, the statutory period began running again upon the Appellate Division's denial of leave on February 19, 2013. (Dkt. 10 at 107-08). The period ran for 1,913 days and was paused on May 17, 2018, when Petitioner filed the second 440 motion. (*Id.* at 113). After Justice Burns denied the motion, the Appellate Division issued an order denying leave to appeal on Sunday, April 21, 2019. (*Id.* at 146). As noted above, by operation of Rule 6(a), the period began running again on Monday, April 22, 2019; Petitioner's purported application for leave to appeal to the Court of Appeals did not provide further tolling. An additional 529 days elapsed before the petition was filed on October 2, 2020. (Dkt. 1 at 11). Thus, even with statutory tolling, the petition is untimely under § 2244(d)(1)(A) by at least 2,675 (233 + 1,913 + 529) days.

- 16 -

**D.     The Start-Dates in Subsections (B) and (C) Do Not Apply**

Petitioner does not suggest that he was impeded from filing in a timely fashion by any state action, and therefore subsection (B) does not apply.  Likewise, Petitioner is not relying on any right made retroactively applicable on collateral review, meaning that subsection (C) is inapplicable.

**E.     The Petition Is Untimely Under Section 2244(d)(1)(D), and Section 2244(d)(2) Does Not Provide Sufficient Statutory Tolling**

Although Petitioner has not asserted that subsection (D) applies, the Court notes that in support of the second 440 motion filed on May 17, 2018 (Dkt. 10 at 113), Petitioner relied on Mr. Dobozin's affidavit dated December 6, 2017 (*id.* at 114).  However, "the question for purposes of Section 2244(d)(1)(D) is not when petitioner received a particular document, but when 'the factual predicate of the claim . . . could have been discovered through the exercise of due diligence.'"  *Romano v. Stanford*, No. 16-CV-5884 (RPK), 2022 WL 1488661, at *12 (E.D.N.Y. May 11, 2022) (quoting 28 U.S.C. § 2244(d)(1)(D)); *see also Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012) (agreeing with its sister circuits that the term "factual predicate," as used in § 2244(d)(1)(D), consists only of the "facts vital to a habeas claim," i.e., "those without which the claim would necessarily be dismissed" under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts or Federal Rule of Civil Procedure 12(b)(6)).  Thus, "if new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)."  *Rivas*, 687 F.3d at 535.

Accepting Petitioner's version of events as true, he became aware of the "factual predicate" supporting his involuntariness and ineffectiveness claims at the time the trial court imposed a determinate sentence of 20 years and thereby violated the alleged sentencing promise previously conveyed to him by Mr. Dobozin.  Although Mr. Dobozin's affidavit arguably "support[ed] or strengthen[ed]," *Rivas*, 687 F.3d at 535, the involuntariness and ineffectiveness claims, Petitioner nonetheless brought the first 440 motion raising the same claim in 2011, nearly seven years before he filed the second 440 motion based on Mr. Dobozin's affidavit.  This indicates that Petitioner was well aware of the "vital facts" supporting his involuntariness and ineffectiveness claims before he obtained Mr. Dobozin's affidavit.

Nonetheless, because it makes no difference to the outcome of the timeliness analysis, the Court will assume for the sake of argument that Mr. Dobozin's affidavit constitutes the "factual predicate" of the involuntariness and ineffectiveness claims such that it fulfills the criteria of § 2244(d)(1)(D).  The Court will assume further that Petitioner, acting with reasonable diligence, could not have obtained the affidavit before December 6, 2017, the day it was signed.  If the date of Mr. Dobozin's affidavit is used as the alternative start-date, Petitioner had one year from December 6, 2017, or until December 6, 2018, to file the petition.

The limitations period began running on December 6, 2017, and stopped on May 17, 2018, when Petitioner filed the second 440 motion.  (Dkt. 10 at 113).  Prior to the filing of the second 440 motion, 162 days had elapsed.  The limitations period was tolled until April 22, 2019, when the Appellate Division denied leave to appeal.  ( *Id.* at 146).  The

period ran for another 529 days, until the petition was filed on October 2, 2020.  (Dkt. 1 at 11).  Even with statutory tolling, the period is untimely under § 2244(d)(1)(D) by 691 (162 + 529) days.

Thus, regardless of whether subsections (A) or (D) of § 2244(d)(1) provide the start-date, the petition is untimely.  It must be dismissed unless Petitioner can demonstrate an exception to the limitations period—either that he is entitled to equitable tolling, *Pace v. Diguglielmo*, 544 U.S. 408, 417 (2005); or that he is actually innocent, *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)

> **F.  Equitable Tolling**

Section 2244(d)(1)'s limitations period "'is subject to equitable tolling in appropriate cases'—specifically, where the petitioner shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *Rivas*, 687 F.3d at 538 (quoting *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010)).  It is only "in 'rare and exceptional circumstances' [that] a petitioner may invoke the courts' power to equitably toll the limitations period."  *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks and citations omitted in original)).

The petitioner bears the burden of establishing extraordinary circumstances and a diligent pursuit of his rights.  *See Pace*, 544 U.S. at 418 ("Generally, a litigant seeking equitable tolling bears the burden of establishing [the required] two elements.").  Petitioner has not attempted to carry this burden.  This Court independently has reviewed the record

but can find no basis to conclude that this is one of those "rare and exceptional [cases],"
*Menefee*, 391 F.3d at 159, in which equitable tolling is warranted.

> ### G.   Actual Innocence

The Supreme Court has held that "actual innocence, if proved, serves as a gateway
through which a petitioner may pass whether the impediment is a procedural bar, . . . or . .
. expiration of the statute of limitations." *McQuiggin*, 569 U.S. at 386.  The petitioner must
come forward with "new reliable evidence—whether it be exculpatory scientific evidence,
trustworthy eyewitness accounts, or critical physical evidence—that was not presented at
trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), showing that it is "more likely than not
that no reasonable juror would have found [him] guilty beyond a reasonable doubt," *id.* at
327.

Although "[a] claim of actual innocence could provide a basis for excusing [a] late
filing even though petitioner pled guilty," *Friedman v. Rehal*, 618 F.3d 142, 152 (2d Cir.
2010), Petitioner has never attempted to show that he is actually, factually innocent of the
crimes to which he pleaded guilty.  Therefore, he has failed to meet the "threshold
requirement," *McQuiggin*, 569 U.S. at 386, of such a gateway claim of actual innocence.

**IV.    CONCLUSION**

For the reasons above, the petition (Dkt. 1) is dismissed as untimely.  Because Petitioner has failed to meet the standards in 28 U.S.C. § 2253(c)(1), (2), the Court declines to issue a certificate of appealability.  The Clerk of Court is directed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       July 26, 2024
             Rochester, New York